UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER FERRELL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SNAPCOMMERCE HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 25-cv-03160-JST<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND ADMINISTRATIVE MOTION FOR EVIDENTIARY HEARING**<br><br>Re: ECF Nos. 15, 24 |

Before the Court are a motion to compel arbitration and an administrative motion for an evidentiary hearing filed by Defendants SnapCommerce Holdings, Inc. d/b/a Super.com and SnapMoney, Inc. d/b/a Super.com (together, "Super"). ECF Nos. 15, 24. The Court will deny both motions.

**I.	BACKGROUND**

**A.	Procedural History**

Plaintiffs Amber Ferrell and Sara Schneider, individually and on behalf of a putative class, filed this action on April 8, 2025, regarding Super's alleged practice of sending text message solicitations and making commercial telephone calls to consumers who have placed themselves on the National Do Not Call Registry. ECF No. 1 ¶ 1. Plaintiffs assert causes of action for violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Oklahoma Telephone Solicitation Act, 15 § 775C.3.

On June 9, 2025, Super filed a motion to compel arbitration, ECF No. 15. Plaintiffs oppose the motion, ECF No. 20, and Super has filed a reply, ECF No. 22. On July 7, 2025, Super filed an administrative motion to hold an evidentiary hearing on the motion to compel arbitration,

1    ECF No. 24.  Plaintiffs oppose the administrative motion, ECF No. 25.  On August 25, 2025,
2    Super filed a statement of recent decision, alerting the Court of the Ninth Circuit's decision in
3    *Morrison v. Yippee Entertainment, Inc.*, No. 24-7235, 2025 WL 2389424 (9th Cir. 2025).  ECF
4    No. 27.

**B.    Super's Website and App**

The following facts regarding the layout of Super's new user signup on its website and app are taken from Super's briefs and supporting declaration and are not disputed by Plaintiffs.  *See* ECF No. 20 ("The layout of the sign-up page is exactly as Super.com represents it to be in its Motion and accompanying declaration.").  When a new user signs up for an account on Super's website or app, they are presented with a page that requires them to enter a phone number:



ECF No. 15 at 7.  Super states at the bottom of this webpage, in relevant part, "By clicking 'Send code' you agree to our Super.com Terms of Use." *Id.*  This statement appears in small, gray font on a white background, and the words "Super.com Terms of Use" are underlined and hyperlinked.  A user who clicks on the hyperlink is taken to a separate page with the Terms of Use, which include an arbitration agreement.  ECF No. 16-3 at 19–24.

## II.     JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d).

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).  On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4).  If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the [C]ourt shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.  If, however, "the making of the arbitration agreement" is "in issue, the court shall proceed summarily to the trial thereof." *Id.*  Until a trial on arbitrability is held, "any motion to compel arbitration" must be held "in abeyance until the factual issues have been resolved." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).

On a motion to compel arbitration, "courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Id.* at 670.  "Courts may consider evidence outside of the pleadings, such as declarations and other documents filed with the court." *Burger v. Northrop Grumman Sys. Corp.*, No. 21-cv-06761-ABM-RWX, 2021 WL 8322270, at *4 (C.D. Cal. Oct. 27,

1   2021).  Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be

2   made on personal knowledge, set out facts that would be admissible in evidence, and show that the

3   affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  The

4   Court must "give to the opposing party the benefit of all reasonable doubts and inferences that

5   may arise."  *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citations

6   omitted).  If the parties contest the existence of an arbitration agreement, courts "generally . . .

7   apply state-law principles of contract interpretation to decide whether a contractual obligation to

8   arbitrate exists."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## IV.   DISCUSSION

### A.   Existence of Contract to Arbitrate

The parties dispute whether Plaintiffs and Super formed a contract to arbitrate.  Such "challenges to the very existence of the contract are, in general, properly directed to the court."  *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017).  This is because "arbitration is a matter of contract and a party cannot be required to submit any dispute which [it] has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The parties agree California law on contract formation applies here.  ECF No. 15 at 13; ECF No. 20 at 9.  To form a contract under California law, there must be "actual or constructive notice of the agreement" and a "manifest[ation of] mutual assent."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023).  The party seeking to compel arbitration has the burden to prove, by a preponderance of the evidence, that a contract to arbitrate exists.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

Super does not attempt to show that Plaintiffs had actual notice of the Terms of Use.  To determine whether Plaintiffs had constructive notice, the Court must consider "the design and content of the website and the agreement's webpage."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  "[A]n enforceable agreement may be found where '(1) the website

1 provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2)
2 the consumer takes some action, such as clicking a button or checking a box, that unambiguously
3 manifests his or her assent to those terms.'" *Oberstein*, 60 F.4th at 515 (quoting *Berman v.*
4 *Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

### 1. Reasonably Conspicuous Notice

For an online notice to be reasonably conspicuous, it "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 856). "[C]onsumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Nguyen*, 763 F.3d at 1179. Thus, if there is a hyperlink, "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857. Plaintiffs raise several complaints regarding the form of notice provided in this case: (1) it is "displayed in tiny gray font far below the phone number text box and the large, bright-blue 'Send code' button," (2) "[t]he 'Terms of Use' hyperlink is not readily apparent," (3) it does not capture a user's name, email address, or other identifying information that would evidence assent, and (4) the notice is obscured by a user's cellphone keyboard once the user clicks on the text box. ECF No. 20 at 13–16.

The Court agrees that the notice provided by Super's website and app is insufficient. As the Ninth Circuit held in *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), "a web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently 'set apart' from the surrounding text." *Id.* at 857; *see also Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481 (2021) (rejecting as not sufficiently conspicuous a "hyperlink to the terms of service [that] is underlined, but does not otherwise draw the user's attention in any way").

Super, simply put, did not "do more than simply underscore the hyperlinked text." *Berman*, 30 F.4th at 857. A link to its terms of use appears in very small, gray font on a white background at the bottom of a page on which it requires users to enter a phone number. The font of this notice is smaller than any other font on the page. *See Sellers*, 73 Cal. App. 5th at 481 (notice insufficient because it appeared in "smaller print than any other print on the page"). And

the hyperlink to the terms of use is underlined but is not distinguished in any other way. This is insufficient to constitute reasonably conspicuous notice. *Berman*, 30 F.4th at 857; *see also Massel v. SuccessfulMatch.com*, 718 F. Supp. 3d 1112, 1117 (N.D. Cal. 2024) ("Because Millionaire Match's links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous to put Mr. Massel on notice of the terms and that Mr. Massel therefore cannot be said to have assented to them.").

Super contends that its form of notice is just like two others recently approved by courts in this district, ECF No. 22 at 13–15, but the Court disagrees. In *Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025), the words "Terms of Service" were not just underlined but also capitalized and colored blue, which helped "indicate they are hyperlinked." *Id.* at *6; *see Berman*, 30 F.4th at 857 ("Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage."). And in *Kroskey v. Elevate Labs, LLC*, No. 5:24-cv-08113-EJD, 2024 WL 1507091 (N.D. Cal. May 27, 2025), the hyperlinks were "in bold with the first letters capitalized," which the court held was sufficient when considered in the "full context of the transaction"—which was "creating an account and paying for a subscription membership." *Id.* at *4. Neither *Sarhadi* or *Kroskey* is an apt comparison to Super's notice, which was not bolded, not colored blue, and not in the context of a paid subscription membership.[1]

As the California Court of Appeal has held,

> [e]ven text that is just slightly smaller, or slightly further away from the box or button the consumer must click on must, at some point, exceed the limits of what constitutes adequate notice. Here, [defendant] chose to use a textual notice attached to a hyperlink as opposed to a pure clickwrap or scrollwrap form, and then chose to

---

[1] For the same reasons, the case for which Super filed a statement of recent decision, ECF No. 27, is also inapposite. In that case, *Morrison v. Yippee Entertainment, Inc.*, No. 24-7235, 2025 WL 2389424 (9th Cir. Aug. 18, 2025), "the hyperlink appeared in bright blue font against a clean white background that stood out from the surrounding text to indicate it was clickable." *Id.* at *1. As discussed above, not so here.

> display that notice in extremely small print and not immediately adjacent to the 'Start my trial' button. By doing so, [defendant] ran the risk of a court concluding, as we do here, that the notice was not sufficiently conspicuous.

*Sellers*, 73 Cal. App. 5th at 481–82 (citation modified). Likewise here, where Super had "complete control over the design of [its] website[]," *id.* at 465, it chose not to do more than present an underscored hyperlink in small, gray font, not distinguished by bolding or a different color. The Court accordingly finds the notice not reasonably conspicuous.

Because Super has not shown that its website and app provided reasonably conspicuous notice of its terms of service, Super has not carried its burden to show that a user entering a phone number on Super's website or app constitutes contract formation. The Court therefore declines to reach any subsequently-presented questions, including whether Plaintiffs actually entered their phone numbers into Super's website or app. Because the Court resolves the motion without relying on any disputed facts, the Court also denies the administrative motion for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the motion to compel arbitration and administrative motion for evidentiary hearing are denied.

**IT IS SO ORDERED.**

Dated: November 25, 2025



JON S. TIGAR
United States District Judge